IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BARRY DURM, JR.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    v.</td><td></td><td>CIVIL NO.: WDQ-13-0223</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>AMERICAN HONDA FINANCE</td><td></td><td></td></tr>
<tr><td>CORPORATION, et al.,</td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>    Defendants.</td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Barry Durm, Jr. sued American Honda Finance Corporation ("Honda Finance") and Honda Lease Trust ("Honda Lease") (together "Honda") for violating the Servicemembers Civil Relief Act ("SCRA")[1] and for other state law claims.[2] ECF No. 1. Pending is Honda's motion to dismiss for failure to state a claim. ECF No. 17. No hearing is necessary. Local Rule 105.6

---

[1] 50 U.S.C. App. § 501 et seq.

[2] Durm "brings this action pursuant to F.R.C.P. 23 on behalf of a Class . . . consisting of all persons . . . who terminated their leases pursuant to the [SCRA] and were not timely refunded the prorated advance lease payments." See ECF No. 1 at 7. The Court will decide whether to certify a class action after the parties have an adequate opportunity to develop and present facts to the Court on the propriety of class treatment. See, e.g., Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1268 (4th Cir. 1981) ("It is seldom, if ever, possible to resolve class representation questions from the pleadings[.]").

(D. Md. 2011). For the following reasons, Honda's motion to dismiss will be granted in part and denied in part.

I.   Background[3]

Durm, a resident of Maryland, was a member of the United States Army Reserve. ECF No. 1 at 4. On or about December 1, 2010, Durm leased a 2011 Honda Pilot from Honda for a 36-month term.[4] *See id.* at 8. At lease signing, Durm paid $5,765.48 as a voluntary "Capitalized Cost Reduction" ("CCR") payment. *Id.* at 3, 11. The CCR is deducted from the "Gross Capitalized Cost" ("GCC"), which "represents the value of the leased property at the beginning of the lease." *Id.* at 3. The difference between the GCC and the CCR is the "Adjusted Capitalized Cost." *Id.* at 4. The "Residual Value"--the estimated value of the car at the end of the lease--is then subtracted from the Adjusted Capitalized Cost. *Id.* The remainder is divided into periodic (monthly) lease payments. *See id.* at 3-4. "The greater the up-front [CCR] payment made, the less the monthly payment, and vice

---

[3] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Honda Lease "is the assignee-lessor of the" Honda Pilot, while Honda Finance "acts as the administrator of the vehicle lease." *See* ECF No. 1 at 4-5.

2

versa."[5] *Id.* at 4. Durm's CCR payment is thus allegedly "a prepay[m]ent of the lease obligation, prorated by [Honda] over the term of the lease." *Id.*

On December 8, 2011, Durm's "reserve unit was ordered to active duty" for a "period of not less than 180 days," and he was deployed to Afghanistan. *See id.* at 4, 8. Following his placement on active duty, Durm "invoked his rights under the [SCRA]," and provided notice to Honda that he was terminating his lease. *Id.* at 7. Durm returned the Honda Pilot to Honda.[6] *Id.* No portion of the CCR payment was refunded to him. *Id.*

On January 23, 2013, Durm filed a six-count complaint[7] alleging that Honda's failure to "refund [a] prorated portion of the [CCR]" violated § 535(f) of the SCRA, because the CCR payment "is a lease amount, paid in advance for a period after the effective date of termination of the lease" (count one). *Id.* at 11. Because of Honda's alleged violation of the SCRA, it: (1) "wrongfully converted [Durm's] money" (count two); and

---

[5] "[T]he difference between the [GCC] and the Residual Value constitutes the rent under the lease, and this obligation is paid via a combination of up-front lease payments (the [CCR]) and periodic lease payments (the monthly payments)." ECF No. 1 at 4.

[6] The Complaint does not allege the date on which Durm terminated the lease or returned the car, but it asserts that these actions were taken "prior to the end of the 36 month lease term." ECF No. 1 at 11.

[7] The complaint demands a jury trial. ECF No. 1 at 15.

3

(2) was unjustly enriched (count three). *Id.* at 11-13. Durm
seeks: (1) consequential and punitive damages, because Honda
"knowingly and/or recklessly failed to comply with" the SCRA
(count four); (2) a declaratory judgment that CCR payments are
"rents paid in advance under the" SCRA (count five); and (3) an
injunction against further violations (count six). *Id.* at 13-
15.

On March 29, 2013, Honda moved to dismiss the complaint for
failure to state a claim. ECF No. 17. On May 3, 2013, Durm
opposed the motion. ECF No. 21. On May 24, 2013, Honda
replied. ECF No. 29.

II. Analysis

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), an action
may be dismissed for failure to state a claim upon which relief
can be granted. Rule 12(b)(6) tests the legal sufficiency of a
complaint, but does not "resolve contests surrounding the facts,
the merits of a claim, or the applicability of defenses."
*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.
2006).

The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l,
Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

4

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Violation of the SCRA

Under the SCRA, a lessee may terminate a lease of a motor vehicle after the lessee enters military service "under a call

or order specifying a period of not less than 180 days."[8]
§ 535(a), (b). "The lessor may not impose an early termination charge" on the lessee. § 535(e)(2). However, the lessee must pay any rent amounts "that are unpaid for the period preceding the effective date of the lease termination . . . on a prorated basis." *Id*. The lessor must refund "[r]ents or lease amounts paid in advance for a period after the effective date of the termination of the lease" to the lessee "within 30 days of the effective date of the termination of the lease." § 535(f). The SCRA must be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *See Boone v. Lightner*, 319 U.S. 561, 575, 63 S. Ct. 1223, 1231, 87 L. Ed. 1587 (1943); *see also Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) ("[T]he SCRA—like its predecessors—must be read with an eye friendly to those who dropped their affairs to answer their country's call.") (internal quotations omitted).

Durm contends that his CCR payment is a "lease amount" that he paid "in advance, for the full period of the lease," that had the "net effect of [a] prorata reduction or prepayment of a portion of each future month['s] payment." ECF No. 21 at 12. Accordingly, under § 535(f), Honda is allegedly required to

---

[8] An eligible motor vehicle lessee terminates the lease by returning the car to the lessor or the lessor's agent. § 535(c)(1)(B).

refund the prorated portion of his CCR payment that applied to the portion of the lease period after the date of Durm's lease termination.[9] *See id.* at 12-13, 18-19. Honda asserts that Durm's CCR payment was a down payment, "not a periodic payment, or an advance payment of a periodic payment that is scheduled to be paid on a future date that falls after the lease is terminated." ECF No. 17-1 at 9. Thus, § 535(f) allegedly does not obligate Honda to refund any portion of the CCR payment. *See id.* The question of whether Durm's CCR payment can be "lease amounts paid in advance for a period after the effective date of the termination of the lease" under § 535(f) of the SCRA appears to be one of first impression.[10]

"[A]ll statutory interpretation questions . . . must begin with the plain language of the statute." *Negusie v. Holder*, 555 U.S. 511, 542, 129 S. Ct. 1159, 173 L. Ed. 2d 20 (2009). "[C]lear language . . . leaves no room for policy argument. The rules are applicable, or they are not. A legal argument predicated on the theory that the rules do not mean what they

---

[9] Honda faults Durm for citing IRS advisory opinion letters to support his claims. *See* ECF No. 22 at 4. The Court need not decide if Durm may cite these letters, because it does not rely on them in deciding Honda's motion to dismiss.

[10] Durm cites IRS advisory opinion letters in support of his interpretation of the SCRA. ECF No. 21 at 15-17. Honda cites federal and Maryland leasing statutes and regulations. ECF No. 17-1 at 9-11. The parties do not cite, and the Court has not found, any state or federal case that decides this issue.

say is 'destined to fail.'" *Steele v. Polymer Research Corp. of Am.*, No. 85 Civ. 5563(CSH), 1987 WL 12819, at *2 (S.D.N.Y. June 18, 1987) (*quoting Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)). In construing a statute, the Court "interpret[s] the words in their context and with a view to their place in the overall statutory scheme." *Tyler v. Cain*, 533 U.S. 656, 662, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001) (internal quotation marks omitted).

### 1. Lease Amounts Paid in Advance

Honda argues that Durm's CCR payment cannot be a "lease amount[] paid in advance," because it is "a payment in the nature of a down payment" not a periodic lease payment. ECF No. 17-1 at 2. The statute does not define "lease amounts" or "paid in advance."[11] However, the plain language of the statute does not limit the lessor's obligations to refunds of "periodic"

---

[11] *See* § 511. For purposes of this motion, the Court decides only whether Durm has alleged facts that state a claim for relief for Durm--whether Durm's voluntary cash payment of CCR is "lease amounts paid in advance" under § 535(f). The Court does not decide, and the question is not before it, whether non-cash value incorporated into the CCR amount (including the value of a car traded-in) is considered "lease amounts paid in advance" under the SCRA. *See* ECF No. 22 at 10. The question of whether all voluntary cash CCR payments made by eligible service member motor vehicle lessees are "lease amounts paid in advance" is more appropriately considered in a motion for class certification.

payments, nor does it exclude down payments from its scope.[12]
*See* § 535(f). Instead, the statute applies to any "lease amounts," as long as they were "paid in advance." Black's Law Dictionary defines an "advance payment" as one "made in anticipation of a contingent or fixed future liability or obligation." Black's Law Dictionary (9th ed. 2009). A "payment" is defined as "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation." *Id.* Accordingly, if, as Durm alleges, Durm's CCR payment formed part of the "lease amounts" that Durm was obliged to pay Honda to lease the Honda Pilot, and he paid this amount "in advance" of a "fixed future liability"--a lease payment owed to Honda, the plain language of the SCRA suggests that Durm's CCR payment is covered by the phrase "lease amounts paid in advance."[13]

Characterizing Durm's CCR payment as a "down payment" does not remove it from the scope of the statute. *See* ECF No. 17-1 at 11. Black's Law Dictionary defines "down payment" as "[t]he

---

[12] Section 535 does not refer to down payments or periodic payments in any provision.

[13] If Honda's definition of eligible payments were accepted, then a service member who voluntarily paid the entire cost of the lease up-front in cash as a CCR payment would not receive any reimbursement after he was called to active duty, resulting in a windfall to Honda. This interpretation is inconsistent with "liberal construction" of the SCRA's obligations. *See Boone*, 319 U.S. at 575, 63 S. Ct. at 1231.

portion of a purchase price paid in cash (or its equivalent) at the time the sale agreement is executed." Black's Law Dictionary (9th ed. 2009). If Durm's CCR payment is a "down payment," as Honda contends, then it is a "portion" of the "purchase price"--a portion of the total lease amount--paid at the time the parties enter the lease. *See id.* This definition does not remove "down payments" from the scope of § 535(f) which applies to "lease amounts" that are "paid in advance."[14]

## 2. For a Period After Termination

To be refunded, the lease amount must also be "paid in advance *for a period after the effective date of the termination of the lease.*" § 535(f) (emphasis added). Honda contends that this language limits the refund obligations to "lease payments that were not scheduled to be due until after the date the lease is terminated." ECF No. 17-1 at 7. However, the statutory language does not tether the refund obligation to the due dates

---

[14] Thus, Honda's citation of federal leasing regulations, which characterize CCR as a "down payment," does not compel the conclusion that CCR cannot also be a "lease amount[] paid in advance." *See* ECF No. 17-1 at 9 (*citing* 12 C.F.R. § 213.4(b), (f)(2)). Similarly, Honda also cites the Maryland Commercial Code which excludes from the definition of CCR "any base lease payments due at the inception of the lease or all of the lease payments if they are all paid at the inception of the lease." ECF No. 17-1 at 10 (*quoting* Md. Code Ann., Com. Law § 14-2001(d) (West 1987)) (internal quotations omitted). However, even if "lease payments" are not included in the definition of CCR, the CCR payment can still be part of the total "lease amounts" owed to the lessor.

10

set by the lessor for periodic payments; instead, the refund obligation begins on the date of lease termination. The statute requires the lessor to refund lease amounts that were "for" the time after the lease terminated, not lease amounts "due after" termination. If, as Durm alleges, his CCR payment resulted in a pro rata reduction of the lease amounts for the period after termination, then it is within the scope of § 535(f).[15] *See* ECF No. 1 at 4.

Honda quotes *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979) for the proposition that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." ECF No. 17-1 at 8. Thus, Honda argues, "[b]ecause the SCRA does not expressly provide for the return of any portion of CCR, all of plaintiff's causes of action fail."

[15] Honda argues that the use of the word "prorated" in § 535(e)(2), and its absence in § 535(f), suggests that Congress did not intend to create a remedy for prorated refunds of CCR in § 535(f). ECF No. 22 at 11 (*citing Smith v. Toyota Motor Credit Corp.*, CIV. WDQ-12-2029, 2013 WL 1325460, at *5 (D. Md. Mar. 28, 2013) ("[T]here is no reason to conclude that the legislature intended to insert such language-particularly when it chose to do so in other provisions.")). However, Honda acknowledges that the statute would require a prorated refund of advance monthly lease payments if a service member paid for a whole month and then terminated the lease before that month ended. *See* ECF No. 22 at 8-9. Thus, the absence of the word "prorated" in § 535(f) does not compel the conclusion that the sub-section does not require any form of prorated relief.

*Id.* However, the scope of the SCRA refund obligation applies to all lease amounts paid in advance "for" the period after lease termination. *See* § 535(f). Thus, this language "expressly" covers prepayments of post-termination lease amounts, which, allegedly, describes Durm's CCR payment.[16] *See* ECF No. 1 at 4.

Accordingly, under a "liberal[] constru[ction of]" § 535(f) of the SCRA, the complaint has sufficiently alleged that Durm's CCR payment is "lease amounts paid in advance," and Honda is obliged to refund those portions of his CCR payment "for the period after the effective date of termination" on a prorated basis.

C. State Law Claims

1. Choice of Law

Durm asserts two state law claims--conversion and unjust enrichment--against Honda.[17] ECF No. 1 at 11-13. To determine

---

[16] Honda also asserts that Durm's interpretation "expand[s] the legislative remedy that only applies prospectively to lease payments a servicemember pays in advance of their due date, to also include a retrospective remedy that requires pro rata refund of CCR." ECF No. 17-1 at 8. Honda does not explain why refunds of periodic lease payments that apply to the period after termination is prospective relief, while CCR payments, which also allegedly apply to the period after termination, are not. Further, even if refunds of CCR are "retrospective" relief, the plain language of the statute does not limit its reach to "prospective" refunds of "lease amounts paid in advance." *See* § 535(f).

[17] The Court has supplemental jurisdiction over these claims, because "they form part of the same case or controversy" as the federal SCRA claim--all three claims "arise from the same set of

what law governs these claims, a federal court must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

Maryland applies the rule of *lex loci delicti* to determine the law to apply in tort cases, such as conversion. *See, e.g., RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009). Under that rule, the court applies the law of the state "where the injury—the last event required to constitute the tort-occurred." *Lab. Corp. of America v. Hood,* 395 Md. 608, 615, 911 A.2d 841, 845 (2006). Because Durm, a Maryland resident,[18] leased the Honda Pilot from, and paid the CCR payment to, a Maryland dealership,[19] the alleged conversion of a portion of the CCR payment apparently took place in Maryland and Maryland law applies to this claim.[20] *See RaceRedi*, 640 F. Supp. 2d at 666 ("[C]onversion occurs in the state where any wrongful retention of plaintiff's property . . . occurs.").

---

facts." *See Eriline Co., S.A. v. Johnson,* 440 F.3d 648, 653 (4th Cir. 2006) (*citing* 28 U.S.C. § 1367(a)).

[18] *See* ECF No. 1 at 4.

[19] *See* ECF No. 17-2 at 4 (lease agreement). Durm does not dispute the authenticity of this lease agreement, which Honda attached to its motion to dismiss.

[20] Although Durm does not specify the law under which he brings the conversion claim, both parties rely on Maryland law in their briefs. *See* ECF Nos. 17-1 at 11, 21 at 20.

13

For contract and unjust enrichment claims, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law where the contract was formed. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992); *RaceRedi*, 640 at 665. A contract is formed where the last act required to make it binding occurs. *Konover Prop. Trust Inc. v. WHE Assocs.*, 142 Md. App. 476, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002). Here, Durm paid the CCR payment that forms the basis of the unjust enrichment claim under a contract formed in Maryland. *See* ECF No. 17-2 at 4. Thus, Maryland law governs this claim.[21]

2. Conversion Claim

In Maryland, conversion is an intentional tort that occurs when a person exerts "ownership or dominion" over the personal property of another in denial of--or inconsistently with--the rights of the owner. *Darcars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004) (internal citations omitted). To be liable for conversion, a person must have "inten[ded] to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985). But "the intent that must be shown does not necessarily involve an improper motive." *Id.*

---

[21] Although Durm does not specify the law under which he brings the unjust enrichment claim, both parties rely on Maryland law in their briefs. *See* ECF Nos. 17-1 at 12, 21 at 21.

Durm alleges that he was entitled to repayment of a prorated portion of the CCR payment he made to Honda under the SCRA, and "Honda did not refund the prorated CCR." ECF No. 1 at 3, 7. Thus, he has sufficiently alleged facts which show that Honda exercised "ownership or dominion" over Durm's personal property in a manner "inconsistent" with Durm's rights under the SCRA. *See Darcars*, 379 Md. at 261, 841 A.2d at 835.

Honda contends that, in general, money is not subject to a claim for conversion under Maryland law. ECF No. 17-1 at 11. Durm asserts that an exception exists for "specific segregated or identified funds," and Durm's CCR payment was "clearly identifie[d] as a separate line item" on his lease. ECF No. 21 at 20. Honda argues that the exception only applies "to separate payments that reside in separate, segregated accounts." ECF No. 22 at 13. Honda also argues that the cause of action fails, because Durm "seeks 'damages,' not the return of specific dollar bills used to make the down payment." *Id.* at 14.

In *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564, 731 A.2d 957, 966 (1999), the Court of Appeals of Maryland, deciding a motion to dismiss, discussed the scope of the exception to the general rule that "monies are intangible and, therefore, not subject to a claim for conversion." Conversion claims for money require the plaintiff to allege "that the defendant converted specific segregated or identifiable funds"--the exception is

generally "'recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction.'" *Jasen*, 354 Md. at 564-65, 731 A.2d at 966 (*citing* 1 Fowler V. Harper et al., *The Law of Torts,* § 2.13, at 2:56 (3d ed. 1986)). The Court then illustrated the exception by contrasting several cases. In *Limbaugh*, the Eleventh Circuit held that the plaintiff could recover in conversion from a broker who wrongfully transferred money from a mutual fund account, because "the money was in the form of specific mutual fund shares" and thus "'sufficiently identifiable.'" *See id.* at 565, 966 (*citing Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 732 F.2d 859, 862 (11th Cir. 1984)). However, in *Lawson*, the Maryland Court of Special Appeals denied a conversion claim, because the defendant who was wrongfully in possession of the proceeds "commingle[d] it with other monies" resulting in "the cash los[ing] its specific identity." *Id.* at 566, 967 (*citing Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 482, 518 A.2d 174, 177 (1986)).[22]

---

[22] *See also Lasater v. Guttmann*, 194 Md. App. 431, 447, 5 A.3d 79, 88 (2010) (once allegedly converted funds "were commingled with the couple's joint funds," through deposit in a joint checking account "they lost their separateness for purposes of a conversion claim").

Durm has not alleged that Honda kept his CCR payment separate for a specific purpose, kept it in a segregated account, or otherwise did not commingle it with other funds.[23] The complaint does not seek the return of the exact funds Durm paid to Honda, but instead seeks damages. *See* ECF No. 1 at 12. Durm basically alleges that, by virtue of his termination of the lease, Honda owes him a specific *amount* of money--creating a relationship akin to that of a creditor-debtor between them-- rather than specific and identifiable bills. *See Lawson*, 69 Md. App. at 482, 518 A.2d at 177 ("When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."). Durm's conversion claim will be dismissed.

3. Unjust Enrichment Claim

Under Maryland law, unjust enrichment requires: (1) a benefit conferred on the defendant by the plaintiff; (2) a defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under

---

[23] *See Jasen*, 354 Md. at 566, 731 A.2d at 967 (denying conversion claim, because even if plaintiff did allege that he "received any identifiable dollar amount of profits," there was no allegation that "those monies were maintained in a separate, segregated account"). It is doubtful that Durm could, in good faith, allege that Honda did not commingle his CCR payment with other funds, kept the CCR payment separate, or should have kept the CCR payment separate.

circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 295, 936 A.2d 343, 351 (2007).

Durm alleges that his CCR payment "was to have reduced his monthly lease payments by an equal amount for each of the anticipated 36 monthly payments." ECF No. 1 at 12. However, once he invoked his rights under the SCRA, "he did not have beneficial use of the automobile and was not obligated to make the lease payments." *Id.* at 13. Because Honda still had "possession, custody, and/or control" of the "CCR that was to have reduced the payment for the unused months of the lease," Honda was "unjustly enriched." *Id.* Durm has sufficiently alleged that he provided a benefit to Honda with the CCR payment, Honda was aware of this payment, and it was inequitable for Honda to retain it once Durm no longer owed Honda lease payments or had use of the Honda Pilot. *See Hill*, 402 Md. at 295, 936 A.2d at 351.

Honda contends that Durm has failed to state a claim, because "there is a written contract, plaintiff's lease, at issue in this lawsuit," and "unjust enrichment claims ordinarily fail when the claim is based on a written contract." ECF No. 17-1 at 12-13.

In general, "no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000). Here, the parties entered an express lease agreement, under which Durm made the CCR payment. *See* ECF No. 1 at 8. However, there is no allegation that the right to a refund of a portion of the CCR payment arose under the lease agreement--Durm alleges that the right arose under the SCRA. *See id.* at 11. Accordingly, there is no contract between Honda and Durm that concerns the subject matter on which Durm's claim for unjust enrichment allegedly rests.[24]

_____

[24] The Court of Appeals noted that the reasoning for the rule is:

> When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

*Caroline Cnty.*, 358 Md. at 96, 747 A.2d at 607. Here, Durm is not seeking to avoid a contractual risk that he assumed when he entered the contract. Instead, he seeks to enforce a statutory right that supersedes the risks and expectations assumed by Durm and Honda in the lease. *See* ECF No. 1 at 11; § 535(e)(1), (f). Thus, because the SCRA essentially forces the parties to rewrite their contract, creating new statutorily-mandated risks and expectations upon contract termination, this rationale for the

Even if the right could be construed as arising under the lease agreement, "when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996) (*cited in Caroline Cnty.*, 358 Md. at 100, 747 A.2d at 609). Although the lease agreement provides for the payment of CCR, it does not address whether the lessee is entitled to a refund of CCR under the SCRA. *See* ECF No. 1 at 11. Thus, the lease allegedly does not fully address the claim at issue here, and Durm may be entitled to a remedy. *See Klein*, 73 F.3d at 786. Durm has stated a claim of unjust enrichment.

D. Remedies

1. Consequential and Punitive Damages

Durm alleges, in a separate count for punitive[25] and consequential damages, that Honda "knowingly and/or recklessly failed to comply with the Act['s] obligation regarding prorated reimbursement of" CCR and "knowingly seized and/or held" Durm's property.[26] ECF No. 1 at 13.

---

general rule excluding quasi-contractual recovery in express contract cases is not applicable.

[25] Punitive damages are available "for willful and wanton violation[s] of the SCRA." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 837 F. Supp. 2d 581, 587 (E.D. Va. 2011) (*citing Gordon*, 637 F.3d at 460).

[26] Durm alleges in this count that § 535 "makes it unlawful to knowingly seize or hold property of a servicemember." ECF No. 1

"There is no separate cause of action for punitive damages apart from an underlying cause of action upon which punitive damages can be grounded" under both federal and Maryland law. *See Biggs v. Eaglewood Mortgage, LLC*, 582 F. Supp. 2d 707, 711 n.5 (D. Md. 2008) *aff'd,* 353 F. App'x 864 (4th Cir. 2009) (dismissing separate count for punitive damages *sua sponte*). Similarly, consequential damages cannot be alleged as a stand-alone cause of action. *Sharma v. OneWest Bank, FSB*, CIV.A. DKC 11-0834, 2011 WL 5167762, at *7 (D. Md. Oct. 28, 2011) ("To the extent the count asserts only consequential damages rather than any legally cognizable cause of action, Plaintiffs fail to state a claim."). Count four will be dismissed, because the requested relief cannot be alleged as a stand-alone cause of action. *See, e.g., id.*

### 2. Declaratory and Injunctive Relief

Durm seeks a judgment "declaring [CCR] payments constitute rents paid in advance" and "enjoining defendants from continued

---

at 13. The only provision of § 535 that references "knowing" violations is subsection (h), which imposes misdemeanor liability for acts done "for the purpose of subjecting" property of a servicemember "to a claim for rent." Even if Durm could allege a claim under a provision of the statute creating criminal liability for certain SCRA violations, he has not alleged that Honda is retaining his property to subject it "to a claim for rent." *See* § 535(h).

withholding of the prorated CCR following a termination of a lease under the" SCRA.[27] ECF No. 1 at 14-15.

Honda argues that, if the Court concludes that Honda violated the SCRA and Durm is entitled to a pro rata share of CCR, equitable relief would be "subsumed by the SCRA claim." ECF No. 17-1 at 15-16. Durm does not respond to this argument.

Section 597a provides that "[a]ny person aggrieved by a violation of this Act may . . . obtain any appropriate equitable or declaratory relief with respect to the violation; *and* . . . recover all other appropriate relief, including monetary damages." § 597a(a) (emphasis added). Section 597b provides that "[n]othing in [§ 597a] shall be construed to preclude or limit any remedy otherwise available under other law, including consequential and punitive damages." Thus, the Act authorizes the award of both equitable and monetary relief in a SCRA action. *See United States v. Williams*, 1:12-CV-551, 2013 WL 596473, at *5 (E.D. Va. Feb. 14, 2013) (awarding the plaintiff both injunctive and monetary relief under the SCRA). The motion to dismiss counts five and six will be denied.

---

[27] To obtain an injunction under the SCRA, the plaintiff must allege and show that such relief is "necessary to prevent future violations." *United States v. B.C. Enterprises, Inc.*, 667 F. Supp. 2d 650, 660 (E.D. Va. 2009) (*quoting Walling v. Clinchfield Coal Corp.*, 159 F.2d 395, 399 (4th Cir. 1946)).

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted in part and denied in part.

12/6/13
Date

William D. Quarles, Jr.
United States District Judge