IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

\*

BARRY DURM, JR.,

  Plaintiff,

    v.       CIVIL NO.: WDQ-13-223

AMERICAN HONDA FINANCE CORP.,

  Defendants.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

On January 23, 2013, Barry Durm, Jr. sued American Honda

Finance Corporation ("Honda Finance") and Honda Lease Trust

("Honda Lease") (together "Honda") for violating the

Servicemembers Civil Relief Act ("SCRA")[1] and for other state law

claims.[2] ECF No. 1. On May 18, 2015, the Court entered an order

preliminarily approving the parties' class action settlement

(the "Settlement Agreement") and the form, manner, and

administration of notice to class members. ECF No. 58. No

class members have objected to the settlement; one class member

---

[1] 50 U.S.C. App. § 501 *et seq.*

[2] Durm sued Honda under Federal Rule of Civil Procedure 23 "on
behalf of a Class . . . consisting of all persons . . . who
terminated their leases pursuant to the [SCRA] and were not
timely refunded the prorated advance lease payments." *See* ECF
No. 1 at 7.

has opted out. ECF No. 73. On Monday, November 2, 2015, the Court held a fairness hearing on final settlement approval and received evidence on Durm's pending motion for attorney fees, costs, and an incentive award, ECF No. 72. ECF No. 78. For the following reasons, the Court will grant final approval of the Settlement Agreement and Durm's motion.

I.   Background[3]

    A.   Facts and Procedural History

    Durm, a resident of Maryland, was a member of the United States Army Reserve. ECF No. 1 at 4. On or about December 1, 2010, Durm entered into a 36-month lease for a 2011 Honda Pilot from Honda.[4] *See id.* at 8. At lease signing, Durm paid $5,765.48 as a voluntary "Capitalized Cost Reduction" ("CCR") payment. *Id.* at 3, 11. The CCR is deducted from the "Gross Capitalized Cost" ("GCC"), which "represents the value of the leased property at the beginning of the lease." *Id.* at 3. The difference between the GCC and the CCR is the "Adjusted Capitalized Cost." *Id.* at 4. The "Residual Value"--the estimated value of the car at the end of the lease--is then

---

[3] The facts are from the complaint, ECF No. 1, the joint motion for preliminary approval of the settlement and supporting documents, ECF No. 57, and the rough transcript of the fairness hearing.

[4] Honda Lease "is the assignee-lessor of the" Honda Pilot, while Honda Finance "acts as the administrator of the vehicle lease." *See* ECF No. 1 at 4-5.

2

subtracted from the Adjusted Capitalized Cost. *Id*. The
remainder is divided into periodic (monthly) lease payments.
*See id*. at 3-4. "The greater the up-front [CCR] payment made,
the less the monthly payment, and vice versa."[5] *Id*. at 4.
Durm's CCR payment is thus allegedly "a prepay[m]ent of the
lease obligation, prorated by [Honda] over the term of the
lease." *Id*.

On December 8, 2011, Durm's "reserve unit was ordered to
active duty" for a "period of not less than 180 days," and he
was deployed to Afghanistan. *See id*. at 4, 8. Following his
placement on active duty, Durm "invoked his rights under the
[SCRA]," and provided notice to Honda that he was terminating
his lease. *Id*. at 7. Durm returned the Honda Pilot to Honda.[6]
*Id*. No portion of the CCR was refunded to him. *Id*.

On January 23, 2013, Durm filed a six-count complaint
alleging that Honda's failure to "refund [a] prorated portion of
the [CCR]" violated § 535(f) of the SCRA, because the CCR
payment "is a lease amount, paid in advance for a period after

---

[5] "[T]he difference between the [GCC] and the Residual Value
constitutes the rent under the lease, and this obligation is
paid via a combination of up-front lease payments (the [CCR])
and periodic lease payments (the monthly payments)." ECF No. 1
at 4.

[6] The Complaint does not allege the date on which Durm terminated
the lease or returned the car, but it asserts that these actions
were taken "prior to the end of the 36 month lease term." ECF
No. 1 at 11.

3

the effective date of termination of the lease" (count one).
*Id.* at 11. Because of Honda's alleged violation of the SCRA,
it: (1) "wrongfully converted [Durm's] money" (count two); and
(2) was unjustly enriched (count three). *Id.* at 11-13. Durm
sought: (1) consequential and punitive damages (count four); (2)
a declaratory judgment that CCR payments are "rents paid in
advance under the" SCRA (count five); and (3) an injunction
against further violations (count six). *Id.* at 13-15. On
December 9, 2013, the Court dismissed counts two and four. ECF
No. 24.

On June 2, 2014, the Court granted the parties' joint
motion to stay proceedings pending the outcome of mediation
before the Honorable Ann Harrington (Ret.). ECF No. 39. On
July 9, 2014, Judge Harrington assisted the parties in a nine-
hour mediation session. ECF No. 57-1 at 10. Following
extensive, arms-length negotiations, the parties agreed on a
framework for a tentative settlement of Durm's claims regarding
a refund of CCR payments. *Id.* Negotiations continued for two
months; thereafter, the parties executed a Memorandum of
Understanding. *Id.* Over the next four months, the parties
negotiated the Settlement Agreement, which was finalized in
April 2015. *Id.*

On May 18, 2015, the Court entered an order preliminarily approving the Settlement Agreement, and the form, manner, and administration of notice to class members. ECF No. 58. The Court also conditionally certified the Settlement Class for settlement purposes,[7] designated Durm as Settlement Class representative, and appointed DeBenedictis & DeBenedictis LLC, the Law Offices of Thomas T. Booth, Jr., LLC, and Shoemaker Law LLC as Class Counsel. *Id.*

On June 2, 2015, the Court approved the parties' joint motion to amend the preliminary approval order to reflect the parties' agreement about the media outlets that would publish the class action notice. ECF No. 60. On July 21, 2015, the Court approved the parties' joint motion to amend the notice and claim form to set a claims deadline of December 31, 2016, and to inform class members that they may file a claim even if they do not have all of the requested information. ECF No. 67.

B.  Summary of Settlement Agreement

The Settlement Agreement defines the settlement class as:

All persons who (a) made a cash capitalized cost reduction payment and, prior to their originally scheduled termination date, terminated their leases with American Honda Finance Corp. between January 1, 2008 and April 27, 2015 pursuant to the Act, and (b) did not receive a full pro rata refund of their cash payment. Excluded from the class are any officers, directors, or associates of Honda or any of its

---

[7] If the Settlement Agreement were not finally approved, class certification would be vacated. ECF No. 58 at 2.

5

> related entities, counsel of record for the parties in
> the Lawsuit or in the Settlement Agreement, and any
> judicial officer to whom the Lawsuit is assigned.

ECF No. 57-3 at 4.[8]

The Settlement Agreement awards "automatic" monetary relief to class members whose accounts have been "flagged" by Honda as SCRA-eligible. *Id.* at 5. Those class members will receive a refund of their CCR "corresponding to the amount of time remaining on their lease when they terminated it under the [SCRA]," less any payment the class member has already received or "deficiency amounts such as missed lease payments or late fees." *Id.* Class members will not incur reductions for excess wear and tear or excess mileage. *Id.* Honda will send those class members whose accounts have been flagged a check for the appropriate amount without requiring the filing of a claim form (with the exception of the class member who opted out). *Id.* at 5-6.[9]

Additionally, class members whose accounts have not been flagged must submit a claim form to be eligible for a refund.

---

[8] Class Counsel estimates that the class includes about 7,000 to 8,000 individuals. Rough Tr. at 6:14-15.

[9] Checks will be mailed within about 60 days of the Settlement Agreement's effective date. ECF No. 57-3 at 6.

*Id.* at 6.[10]  Refunds for class members submitting claim forms will be calculated in the same manner as those whose accounts were flagged for an automatic refund.  *Id.*[11]  The Settlement Agreement has a *de minimis* exception providing that class members whose refund would be less than five dollars will not receive a refund.  *Id.*[12]

Honda agreed not to object to Durm's request for attorney fees up to $350,000 and costs up to $7,500.  *Id.* at 7.  This "Class Counsel Payment" is in addition to benefits paid to class members.  *Id.*[13]  Honda also agreed not to object to a $2,500 incentive payment to Durm.  *Id.* at 8.  In exchange for relief under the Settlement Agreement, the class members agreed to release Honda from claims related to their CCR payments.  *Id.* at 11.

---

[10] If Honda's records do not show that a class member terminated the lease under the SCRA, Honda will require documentation demonstrating the class member's entitlement to relief.  *Id.*

[11] Checks will be mailed within about 60 days of Honda's receipt of a valid claim form--and after confirmation of entitlement to relief--or within about 60 days of Honda's receipt of additional documents demonstrating entitlement to relief.  *Id.*

[12] Additionally, Honda has changed its business practice and treats service members who terminate their leases under the SCRA in the manner described in the Settlement Agreement.  Rough Tr. at 10:2-7.

[13] The $357,500 Class Counsel Payment represents about 15 to 19 percent of the total benefit secured to the class.  *See* ECF No. 72 at 2.

C.    Subsequent Procedural History

On September 18, 2015, Durm moved--unopposed--for attorneys' fees, costs, and an incentive award. ECF No. 72. On October 13, 2015, Honda provided notice of class members opting out of the Settlement Agreement. ECF No. 73. On October 22, 2015, Honda informed the Court about its compliance with notice requirements. ECF Nos. 75, 76. That day, Durm submitted a memorandum of points and authorities in support of the final approval order. ECF No. 76. On November 2, 2015, the Court held a fairness hearing on final settlement approval and received evidence on Durm's pending motion for attorney fees, costs, and incentive award. ECF No. 78.

II.   Analysis

A.    Final Approval of Settlement Agreement

1.    Standard of Review

Before approving a settlement in a certified class action, the court must evaluate its procedural and substantive fairness. *See* Rule 23(e).

To ensure procedural fairness, Rule 23(e) requires: (1) court-approved notice to all class members bound by the proposed settlement, (2) a hearing to determine whether the proposal is "fair, reasonable, and adequate,"[14] (3) the parties' statement

---

[14] As noted above, a hearing was held on November 2, 2015.

8

specifying their agreement,[15] and (4) an opportunity for class members to object.[16]  *Id.*  "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

In Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(c)(2)(B).  The content of the notice must sufficiently inform class members of the terms of the proposed settlements and their available options.[17]  *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp.

---

[15] On May 7, 2015, the parties filed the Settlement Agreement and a memorandum describing it.  *See* ECF Nos. 57-1, 57-3.

[16] The court may refuse approval if a proposed settlement does not allow individual class members to request exclusion, even if class members had and declined an earlier opportunity for exclusion.  *See* Rule 23(e).  An objection may be withdrawn only with leave of court.  Rule 23(e)(5).  This proposed settlement contains an opt-out provision for prospective beneficiaries and informed class members about their right to object.  ECF No. 57-3-2 at 13-14.

[17] The notice must state in clear, "easily understood language:"

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time

2d 896, 906 (E.D. Va. 2001) (*quoting Maher v. Zapata Corp.*, 714
F.2d 436, 451 (5th Cir. 1983)).

Courts in the Fourth Circuit engage in a bifurcated
analysis to determine if a settlement is "fair, reasonable, and
adequate" under Rule 23. *See In re MicroStrategy, Inc. Sec.
Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (*citing Jiffy
Lube*, 927 F.2d at 158-59). To determine if the proposed terms
are fair, the court should consider: "(1) the posture of the
case at the time settlement was proposed, (2) the extent of
discovery that had been conducted, (3) the circumstances
surrounding the negotiations, and (4) the experience of counsel
in the area of class action litigation." *Groves v. Roy G.
Hildreth & Son, Inc.*, 2:08-CV-00820, 2011 WL 4382708, at *4
(S.D.W. Va. Sept. 20, 2011) (*citing Jiffy Lube*, 927 F.2d at
159). To determine if the settlement is adequate, the Court
considers: "(1) the relative strength of the plaintiffs' case on

and manner for requesting exclusion; and (vii) the
binding effect of a class judgment on members under
Rule 23(c)(3).

Rule 23(c)(2)(B). Here, the notice, in clear language, explains
the basis for the suit and the key terms of the settlement
agreement including its binding nature, defines the settlement
class, provides the date, time, and place of the fairness
hearing, and discusses the process by which a class member may
enter an appearance at the fairness hearing and request
exclusion from the class. *See* ECF No. 65-3. Accordingly, the
notice meets these Rule 23(c)(2) requirements. *See, e.g., Boyd*,
2014 WL 359567, at *7.

the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *MicroStrategy*, 148 F. Supp. 2d at 665.

There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinkerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). Because a settlement hearing is not a trial, the court's role is more "balancing of likelihoods rather than an actual determination of the facts and law in passing upon . . . the proposed settlement." *Id.* (*quoting Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (internal quotations omitted)).

    2.   Fairness Determination

        a.   Procedural Fairness

As required by Rule 23(e), in mid-August 2015, Honda sent the court-approved "Notice of Proposed Class Action Settlement" to 7,191[18] potential class members. ECF No. 75 at 1.[19]

---

[18] At the fairness hearing, Class Counsel stated that Honda sent 7,128 notices. Rough Tr. at 6:16-17.

[19] Honda identified potential class members by a search of its electronic records. ECF No. 75 at 1. The list of class members was possibly over-inclusive; because Honda could not

11

Additionally--and in case its mailing efforts failed to reach all potential class members--Honda twice published notices about the settlement in *Stars & Stripes* (print and online)[20] and in the *Reserve & National Guard Magazine* (print and online).[21] ECF No. 74 at 1. Honda established a dedicated website[22] to inform class members about the settlement. ECF No. 75 at 2. The website began operating in June 2015 and was periodically updated. *Id.*

Under the circumstances of this case, when all class members are not known in advance, notice must be made "to all members who can be identified through reasonable effort." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997). A dedicated website is "a useful supplement to individual notice." *Manual for Complex Litigation*, § 21.311 (4th ed. 2004). If class members may not be identified after reasonable efforts, "[p]ublication in magazines, newspapers, or trade journals may be necessary." *Id.*

---

specifically identify SCRA terminations in a computer-searchable way, it included persons who may not have terminated leases early under the SCRA or who may have been entitled to a refund of less than five dollars. *Id.*

[20] Honda published notices in *Stars & Stripes* on July 20, 2015 and August 10, 2015. ECF No. 74 at 1.

[21] Honda published notices in the *Reserve & National Guard Magazine* on June 19, 2015 and August 19, 2015. *Id.*

[22] http://www.SCRASettlement.com.

Here, Honda's method of direct mail notice to an expansive list of potential class members, which it supplemented with a dedicated website and publication in military magazines, was reasonable. The notices, which were sent well before the fairness hearing, made reasonable efforts to inform class members about the settlement and "permit[ted] the class as a whole 'to flush out whatever objections might reasonably be raised to the settlement.'" *Grice v. PNC Mortgage Corp. of Am.*, CIV. A. PJM-97-3084, 1998 WL 350581, at *8 (D. Md. May 21, 1998) (*quoting Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). Accordingly, the parties have complied with Rule 23(c)(2). Because the parties have complied with Rule 23(c)(2) and (e),[23] the proposed settlement meets the procedural requirements for fairness.

      b.   Substantive Fairness

         i.   Fairness of Settlement

When the parties began settlement negotiations, litigation had been ongoing for over a year but had not proceeded beyond the motion to dismiss stage, and the Court had not considered a motion to certify the class.[24] Durm's claims were pending an

---

[23] *See supra* notes 14-16.

[24] *See Microstrategy*, 148 F. Supp. 2d at 664 (finding settlement fair "although [it] was reached relatively early in the litigation," because the settling parties had "vigorously contested a motion to dismiss").

13

additional year before the parties reached the proposed
settlement. ECF No. 76 at 20. Throughout negotiations, the
parties conducted discovery about the size and nature of the
potential class, and the likely amount of damages, including an
analysis of more than 2,500 leases and corresponding prorated
CCR refunds. *Id.* at 16. Accordingly, the parties had a
sufficient basis for accurately assessing the merits of the
case. There is no indication in the record of bad faith or
collusion in the settlement negotiations; the parties engaged in
court-supervised mediation and represent that the settlement
negotiations were at arms-length. *Id.* at 10. Class Counsel
have litigated similar issues in a putative class action against
different defendants. *Id.* at 16; *see also* ECF Nos. 72-2 at 6-7;
72-3 at 7-8. They have attested to the settlement's
reasonableness. ECF No. 76 at 6-7. Accordingly, because the
*Jiffy Lube* factors favor a finding of fairness, the Court will
find that the settlement is fair.

ii. Adequacy of Settlement

Although Durm prevailed on most of his claims at the motion
to dismiss stage, neither this Court nor the Fourth Circuit had
considered whether the proposed class was certifiable. Further,
Honda has contended that down payments are not advance lease
payments under the SCRA, and that "federal and state leasing
authorities' definition of [CCRs] could distinguish down

14

payments from lease amounts." ECF No. 76 at 21. If the settlement agreement is terminated, the parties agree to return to their pre-settlement litigation positions. *Id.* at 21; *see also* ECF No. 58 at 2. The parties would undertake additional extensive discovery and trial preparation, and motions practice would include a motion to certify a class. ECF No. 76 at 21-22. Honda would vigorously defend the suit at both the trial and appellate level; before the parties entered settlement negotiations, Honda had moved to certify for interlocutory appeal the denial in part of its motion to dismiss. *Id.* at 15; ECF No. 27. Accordingly, even after almost three years of litigation, the road to recovery--particularly for the class as a whole--likely would be protracted and costly if the settlement is not approved.[25] Furthermore, the lack of objections and opt-outs from the class weighs heavily in favor of adequacy. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009).

The defendant's solvency may be relevant in evaluating the settlement's adequacy if the defendant likely could not satisfy a litigated judgment, "thus making settlement the only means for

---

[25] *Cf. Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 408, 416 (E.D. Pa. 2010) (noting that "there is always a risk that the Court or a jury will disagree" that the defendants were liable for Fair Credit Reporting Act violations despite the plaintiff's success at the motion to dismiss stage).

claimants to recover at all." *Serzone*, 231 F.R.D. at 245.

Although Honda could likely afford to pay a much larger

judgment, here, the class members will receive a full refund of

claimed damages. ECF No. 76 at 22. Further, because the other

factors weigh toward a finding of adequacy, this factor may be

given less weight. *See Serzone*, 231 F.R.D. at 245 (*citing*

*Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D. W. Va.

2002)). Accordingly, the Court will find that the settlement is

adequate.

     B.   Litigation Expenses & Attorney Fees

     The Settlement Agreement provides for an award of attorney

fees up to $350,000 and costs up to $7,500. *See* ECF No. 57-3 at

7. Class Counsel have requested $350,000 in attorney fees and

$5,179.55 in costs. ECF No. 72 at 2-3.[26]

     1.   Attorney Fees

     Under Federal Rule of Civil Procedure 23(h), "the court may

award reasonable attorney's fees . . . that are authorized . . .

by the parties' agreement." There are two methods commonly used

for calculating an attorney fee award: the lodestar method and

the "percentage of recovery" method. *See The Mills*, 265 F.R.D.

at 260. District courts in the Fourth Circuit, and the majority

of courts in other jurisdictions, use the percentage of recovery

---

[26] The $350,000 in attorney fees includes about 60 hours of
future work for the class. ECF No. 72 at 19.

method in common fund cases. *See id.*; *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995). Here, the percentage of recovery method is inappropriate because the attorney fees will not be deducted from a common fund. *See Cerrato v. Alliance Material Handling, Inc.*, No. CIV. WDQ-13-2774, 2014 WL 7190687, at *4 (D. Md. Dec. 16, 2014).

"The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate." *Saman*, 2013 U.S. Dist. LEXIS 83414, at *14 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). The Court may adjust the lodestar figure by considering the following 12 factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fee awards in similar cases. *Grissom v. The Mills*

17

*Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (*citing Spell v. McDaniel,* 824 F.2d 1380, 1402 n. 18 (4th Cir. 1987)); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013).

### a. Reasonable Rate

The fee applicant must establish the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson*, 560 F.3d at 244. Durm has submitted declarations and certifications by Class Counsel--Michael J. DeBenedictis, Esq., and Thomas T. Booth, Jr., Esq. ECF Nos. 72-1, 72-2, 72-3. Both attorneys charge a $540 average hourly rate. *See, e.g.*, ECF Nos. 72-1 at 2; 72-2 at 4; 72-3 at 2.

Both attorneys attest that their rates are regularly charged by attorneys with comparable experience in similar matters;[27] however, "affidavits of *other local lawyers* who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" is considered good evidence of the prevailing market rate. *Robinson*, 560 F.3d at 245 (emphasis added); *see also Beyond Sys., Inc. v. World Ave. USA, LLC*, No. CIV.A. PJM-08-921, 2011 WL 3419565, at *3 (D. Md. Aug. 1, 2011) ("When submitting a fee

---

[27] *See* ECF Nos. 72-2 at 2; 72-3 at 2.

petition, a party should submit affidavits from other attorneys attesting to the reasonableness of the hourly rates.").[28]

Absent sufficient documentation, the Court may rely on its market knowledge. *Beyond Sys.*, 2011 WL 3419565, at *4. In this district, market knowledge is found in Appendix B of the Local Rules, which provides "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." *Id.* To guide the Court in awarding fees, the Local Rules establish the following presumptively reasonable hourly fee ranges:

(a) Lawyers admitted for less than 5 years: $150-225;
(b) Lawyers admitted for 5 to 8 years: $165-300;
(c) Lawyers admitted for 9 to 14 years: $225-350;
(d) Lawyers admitted for 15 to 19 years: $275-425;
(e) Lawyers admitted for 20 years or more: $300-475;
(f) Paralegals and law clerks: $95-150.

App'x. B.3 to the Local Rules (D. Md. 2014).

DeBenedictis has practiced law for 15 years; Booth has practiced law for 20 years. Rough Tr. at 12:4-9. Although the hourly rate is more than the presumptively reasonable rates in the Local Rules, Class Counsel have significant skill and experience in complex class action suits. Rough Tr. at 11:18-12:3; ECF Nos. 72-2 at 6-7; 72-3 at 7-8. Further, the attorney

---

[28] Durm contends that the Laffey Matrix provides for a $640 rate for the relevant markets. ECF No. 72 at 20. Although the Court may consider what the attorney actually charged his client and the hourly rates recommended by the "Laffey Matrix"--an official statement of market-supported reasonable attorney fees rates by the United States Court of Appeals for the District of Columbia--neither is sufficient evidence of the prevailing market rate. *Robinson*, 560 F.3d at 244-45.

fee requested was the result of an arms-length negotiation between experienced national counsel.  Rough Tr. at 13:18-14:1.  Accordingly, the hourly rate is reasonable.

b.   Reasonable Hours

Durm must also demonstrate that the requested hours are reasonable "by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *CoStar Grp., Inc.* *v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).  However, although "[c]ontemporaneous time records are the preferred method," a summary chart explaining, "for each attorney, the date, the hours expended[,] and the nature of the work done," may suffice.  *Beyond Sys.*, 2011 WL 3419565, at *6.

Here, DeBenedictis seeks reimbursement for 266.5 hours of work performed, and 60 hours of work to be performed in finalizing the settlement.  ECF No. 72-2 at 4.  Booth seeks reimbursement for 219.9 hours of work performed.  ECF No. 72-3 at 4.  Both attorneys have submitted summary charts stating the number of hours spent on various tasks: case development, background investigation, case administration, pleadings, discovery, motions practice, mediation, and fee petition preparation.  ECF Nos. 72-2 at 4; 72-3 at 4.  Additionally, both attorneys have submitted detailed time records describing each task performed, the date, and the amount of time spent on each

task. *See* ECF No. 77 (sealed); *Beyond Sys.*, 2011 WL 3419565, at *6 (finding reasonable time records and summary charts describing "each task worked on, the attorney working on the task, the date, and the amount of time spent on the specific task"). The time records show no unnecessary duplication of tasks. *See* App. B.2.d to the Local Rules (D. Md. 2014) (guidelines for calculating fees when parties are represented by multiple attorneys). Accordingly, the requested hours are reasonable.

        c.    Lodestar Adjustment

The lodestar rate is $295,056 ($540 per hour multiplied by 546.4 hours). The requested $350,000 award is about 1.2 times the lodestar rate.

Several factors favor finding the award reasonable. Class Counsel have invested almost three years and a significant amount of time working on this case, with no guarantee of success. Rough Tr. at 11:4-6. The suit involved novel issues of law that Class Counsel have skillfully developed and advanced. *Id.* at 10:19-25. "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee." *Singleton,* 976 F. Supp. 2d at 689. Accordingly, the Court will award Class Counsel the requested $350,000 in attorney fees.

2. Costs

Plaintiffs entitled to recover attorney fees may also recover "reasonable litigation-related expenses as part of their overall award." *Singleton*, 976 F.Supp.2d at 689 (*quoting Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at \*10 (D. Md. Oct. 17, 2012) (internal quotations omitted)); Rule 23(h). Such costs include reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client for the provision of legal services. *Id.* (*citing Spell*, 852 F.2d at 771).

Class Counsel have submitted affidavits documenting their out-of-pocket costs in conducting this litigation. *See* ECF Nos. 72-2 at 5; 72-3 at 5. They request reimbursement for costs associated with photocopies, postage, filings, experts, and travel. These are typical reimbursable costs. *See Singleton*, 976 F. Supp. 2d at 689. Accordingly, the Court will award Class Counsel the requested $5,179.55 in costs, for a total $355,179.55 Class Counsel Payment.

C. Incentive Payment to the Representative Plaintiff

The settlement agreement provides for a $2,500 incentive payment to Durm. ECF No. 77-2 at 22. As part of a class action settlement, "named plaintiffs . . . are eligible for reasonable incentive payments." *Stanton v. Boeign Co.*, 327 F.3d 938, 977

22

(9th Cir. 2003).[29] To determine whether an incentive payment is warranted, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook,* 142 F.3d at 1016; *see also Singleton*, 976 F.Supp.2d at 692 (approving incentive payment of $2,500 to each named plaintiff because each had devoted considerable time to helping Class Counsel prepare for the litigation and participating in the mediation and undertook some personal risk to further the lawsuit).

Class Counsel declare that Durm has spent considerable time on this case; he has assisted in its preparation, provided discovery to Honda, and participated in telephone calls and mediation. ECF No. 72-1 at 7. He further insisted on class-wide relief. *Id.* Accordingly, because Durm has substantially participated in the litigation and settlement--and actively advocated for the interests of the class--the Court will award the requested incentive payment of $2,500.[30]

---

[29] "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

[30] *Cf.* Helmick v. Columbia Gas Transmission, CIV.A.2:07-CV-00743, 2010 WL 2671506, at *3 (S.D.W. Va. July 1, 2010) (awarding

23

III. Conclusion

For the reasons stated above, the Court will grant final approval of the Settlement Agreement, and will grant Durm's motion for attorney fees, costs, and an incentive award.

11/4/15

Date

William D. Quarles, Jr.
United States District Judge

---

$50,000 incentive payment when representative plaintiff actively participated in the litigation and mediation).